# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

————————————————————

No. 1D17-5259

————————————————————

NORMANDY INSURANCE
COMPANY,

    Appellant,

    v.

JOSE SORTO, JIMERICO
CONSTRUCTION, INC., and
AMERISURE INSURANCE
COMPANY,

    Appellees.

————————————————————

On appeal from an Order of the Judge of Compensation Claims.
Iliana Forte, Judge.

Date of Accident: May 2, 2016.

October 31, 2018

OSTERHAUS, J.

After a heavy Bobcat machine ran over Jose Sorto's foot at his job site one morning, his employer J.A.M. Construction called its insurance broker about the expected workers' compensation claim. Upon hearing of the injury, the broker promptly submitted the paperwork to obtain workers' compensation coverage with Normandy Insurance Company. J.A.M.'s broker did not disclose that morning's accident. Normandy proceeded to write the policy

effective as of that same day forward, but when it discovered Mr. Sorto's undisclosed injury, it refused to cover the claim. And it filed a case seeking repayment from the general contractor's workers' compensation insurer.

Ultimately, a Judge of Compensation Claims granted the motion for summary order against Normandy on the basis of a default rule that the insurance agreement between J.A.M. and Normandy was effective as of 12:01 a.m. of its effective date (there was no time-of-day term specified in the agreement). Normandy's policy was thus determined to cover Mr. Sorto's morning injury. We reverse, however, because Mr. Sorto's claim involves an undisclosed, known loss that Normandy's policy could not cover. Florida's insurance laws apply known loss principles and preclude coverage for losses that have already taken place. Uninsured persons cannot experience a loss, then scramble to get insurance and fail to disclose their loss, and then have the cost of their loss borne by the new insurer.

I.

An ambulance carted Jose Sorto to the hospital one morning in May 2016, after a Bobcat S300 ran over his foot at the jobsite. His injury was bad. So his employer, subcontractor J.A.M. Construction, promptly called its insurance agent about the expected workers' compensation claim. J.A.M. didn't know it, but it didn't have workers' compensation coverage. J.A.M.'s insurance agent had inquired about getting workers' compensation coverage a month before, but hadn't finalized anything. Once the agent heard about the new accident, he promptly submitted all the paperwork and got coverage for J.A.M. with Normandy Insurance Company made effective that same day. The agent did not tell Normandy about Mr. Sorto's injury that morning, but made it clear that J.A.M.'s coverage should be made effective for that day.

Mr. Sorto's injury was later reported to Normandy in the form of a claim. And for a while, Normandy duly accepted the claim and provided medical care and indemnity benefits. But once it discovered that Mr. Sorto's injury pre-existed J.A.M.'s application for coverage and wasn't disclosed, Normandy objected to covering it. Normandy instead sought contribution from the general contractor at the work site, Jimerico, Inc., who otherwise would be

considered Mr. Sorto's statutory employer and responsible for providing workers' compensation coverage for the injury. *See* § 440.10(1)(b), Fla. Stat. (2016). Jimerico's insurer, Amerisure Insurance Company, filed a Response and Counter Motion for Final Summary Order. Amerisure argued that according to Normandy's policy with J.A.M., Normandy's coverage began at 12:01 a.m. on the day of the accident, prior to Mr. Sorto's accident, and thus Normandy was responsible for covering the injury. The JCC agreed with Amerisure that Normandy was responsible for covering the loss and granted Amerisure's motion. *See* Fla. Admin. Code R. 60Q-6.120(1) (authorizing JCCs to grant summary final order on the issue of whether there is coverage). Normandy then appealed.

II.

An appellate court considers de novo whether disposition by summary final order was appropriate. *See Moya v. Trucks & Parts of Tampa, Inc.*, 130 So. 3d 719, 721 (Fla. 1st DCA 2013). This court reviews de novo a JCC's interpretation of the insurance policy contract and the determination of whether the law requires the insurer to provide coverage. *See Bend v. Shamrock Servs.*, 59 So. 3d 153, 156 (Fla. 1st DCA 2011); *State Farm Mut. Auto. Ins. Co. v. Mashburn*, 15 So. 3d 701, 704 (Fla. 1st DCA 2009).

The key question in this appeal is whether a workers' compensation insurer must cover claims that were known to the insured before procuring coverage, but that weren't disclosed to the insurer. Nothing in the Workers' Compensation Law, chapter 440 of the Florida Statutes, requires new insurers to cover an insured's prior known losses. Nor do we think that the parties' contract in this case compels Normandy to cover J.A.M.'s known loss. Rather, our cases explicitly forbid insureds from saddling insurers with known losses, as opposed to covering for the risk of loss. Insurance is meant to cover uncertainties, not certain losses. And we have recognized that extending insurer liability to cover known losses would undermine the concept of insurance and the stability of the insurance system.

This court most recently addressed the issue in *Interstate Fire & Casualty v. Abernathy*, 93 So. 3d 352 (Fla. 1st DCA 2012). In *Abernathy*, a sponsor of a fundraising event lacked liability

3

coverage when a child was seriously injured playing on an "inflatable bungee run" at the event. *Id.* at 354. After a claim was filed for the child's injury, the sponsor contacted the supplier of the party's recreational gear and requested that it secure a certificate of insurance naming the event sponsor as an additional insured. *Id.* at 355. It was four days after the event when the insurer issued the certificate of insurance. *Id.* Under these circumstances, this court reversed a judgment against the insurer on the basis that known losses cannot be insured against. *Id.* at 359. Our opinion explained that Florida's insurance laws embody fortuity and known loss principles that preclude coverage for losses that have already taken place. *Id.* at 358. "An agreement to assume a known loss is not insurance." *Id.* at 359. Indeed the very definition of "insurance" in Florida law is "a contract whereby one undertakes to indemnify another or pay or allow a specified amount or a determinable benefit upon determinable *contingencies*." § 624.02, Fla. Stat. (emphasis added). We went on to explain that insurers could not cover known losses without undermining the entire system:

> The rule forbidding "insuring against" known losses is part and parcel of the public policy to protect other policy holders against insolvent insurers. . . . "The concept of insurance is that the parties, in effect, wager against the occurrence or non-occurrence of a specified event; the carrier insures against a risk, not a certainty." *Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27, 29 (1st Cir. 1981). . . . "Even the most loosely stated conceptions of insurance and indemnity require these element[s]. Hazard is essential. . . . If there is no risk, . . . there can be [no] insurance." *Jordan v. Group Health Ass'n*, 107 F.2d 239, 245 (D.C. Cir. 1939). "The principle of public policy that insurance should only cover fortuitous losses is universally recognized." Scott C. Turner, *Insurance Coverage of Construction Disputes* § 3:18 (2011).

*Id.* at 359. So strong was our policy view in *Abernathy* that it didn't matter there, unlike here, that the injury had been disclosed to the insurer before the certificate was issued. *Id.*

Our conclusion in *Abernathy* wasn't an aberration. The Fifth

4

District wrestled with a similar issue two years earlier in a title insurance case. *See Nourachi v. First Am. Title Ins. Co.*, 44 So. 3d 602 (Fla. 5th DCA 2010). In *Nourachi*, it held that a known and undisclosed title defect rendered the title insurance policy unenforceable because the insured knew and failed to disclose the defect at the time he sought the insurance. *Id.*; *see also Nat'l Life Ins. Co. v. Harriott*, 268 So. 2d 397 (Fla. 2d DCA 1972) (involving a life insurance policy). Then-Judge Lawson's concurring opinion in *Nourachi* added that very serious consequences would flow from expanding the concept of insurance to cover known losses: "because society as a whole relies on insurance, public policy will not permit a transaction that is anathema to the very concept of insurance which, if allowed in the aggregate, could put insurance at risk for all." *Id.* at 610 (Lawson, J., concurring) (citation omitted).

These cases and Florida's policy against insuring known losses apply here directly. J.A.M.'s insurance broker only stirred into action—finalizing the paperwork and gaining workers' compensation coverage for his client from the insurer—after being notified of Mr. Sorto's serious injury. Then, in seeking the coverage, J.A.M.'s agent didn't disclose his serious injury to the insurer. Under these circumstances, Florida law doesn't permit the insurer Normandy to be left holding the bag for Mr. Sorto's known loss, but locates coverage for his claim in the policy of the general contractor. *See* 440.10(1)(b), Fla. Stat.; *Mena v. J.I.L. Constr. Grp. Corp.*, 79 So. 3d 219, 224 (Fla. 4th DCA 2012) (recognizing that "where a subcontractor . . . fails to secure compensation, the contractor is liable for the same").

In reaching this conclusion, we note Appellees' reliance on *La Quay v. Union Fidelity Life Insurance Co.*, 403 So. 2d 1359 (Fla. 4th DCA 1981). In *La Quay*, the parties contested the time of day that a life insurance policy became effective, where, unbeknownst to the parties, the insured had passed away in the early morning of the same day that the policy issued in the afternoon. *Id.* at 1360. The Fourth District discussed multiple cases from multiple jurisdictions in reaching the conclusion that when a policy does not set an effective date that includes a specific time of day, its coverage begins as of 12:01 a.m. on the effective date. *Id.* at 1360-62. The policy was construed in favor of the insured in *La Quay*. But this case differs in a very important way. *La Quay* was decided

5

in the absence of evidence of any concealment. *La Quay* specifically limited its holding to cases where the loss isn't already known and there has been no concealment. *Id.* at 1362-63. The insurance application in *La Quay* had been submitted a couple weeks prior to the loss, and the loss wasn't known by the agent or insurer when the policy issued. In other words, "it could not be argued that [anyone] did anything to promote indemnity with knowledge of the insured's death." *Id.* at 1362. J.A.M.'s circumstances are different here, because its agent knew and concealed the information about Mr. Sorto's loss from the insurer Normandy.

Finally, we reject Appellees' argument that the JCC could not rule for Normandy without erroneously reforming the coverage terms, or voiding J.A.M.'s workers' compensation coverage altogether. This result applies specifically to Mr. Sorto's known and undisclosed claim without more broadly affecting or canceling J.A.M. workers' compensation coverage for other losses. Normandy bears the risk of other contingencies and losses according to the terms of the coverage. The issue in this case was only whether the subcontractor's policy, or the contractor's policy, supplied the coverage for Mr. Sorto's loss. And it was within the JCC's jurisdiction to determine whether and whose coverage applied to this loss by ruling on the insurers' competing motions for summary final order. *See* Fla. Admin. Code R. 60Q-6.120.

III.

Accordingly, we reverse the summary final order granted in Amerisure's favor order and remand for the entry of a summary final order in favor of Normandy.

REVERSED and REMANDED.

ROBERTS and WETHERELL, JJ., concur.

––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––

6

Richard M. Stoudemire and William T. Stone, Jr. of Saalfield Shad, P.A., Jacksonville, for Appellant.

Alan D. Kalinoski and Eric J. Netcher of Dean, Ringers, Morgan & Lawton, P.A., Orlando, for Appellees Jimerico Construction, Inc., and Amerisure Insurance.

No appearance for Appellee Jose Sorto.